# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In Re: ) | | Chapter 7 |
| ) | | |
| MIRIAM DRAIMAN ) | | Case No. 05 B 20535 |
| Debtor. ) | | |
| _____) | | |
| ) | | Judge Carol A. Doyle |
| MULTIUT CORPORATION, ) | | |
| an Illinois corporation, ) | | |
| Plaintiffs, ) | | |
| v. ) | | Adversary No. 05 A 01783 |
| ) | | |
| MIRIAM DRAIMAN, ) | | |
| Defendant. ) | | |
| _____) | | |
| ) | | |
| NACHSHON DRAIMAN, ) | | |
| Plaintiffs, ) | | |
| v. ) | | Adversary No. 05 A 01784 |
| ) | | |
| MIRIAM DRAIMAN, ) | | |
| Defendant. ) | | |

## MEMORANDUM OPINION

Plaintiffs Multiut Corporation ("Multiut") and Nachshon Draiman ("Nachshon," collectively, the "plaintiffs") move for summary judgment against Mrs. Miriam Draiman ("Miriam") on Count V and Count I respectively of their adversary complaints. The adversary complaints allege, among other things, that Miriam is liable for certain debts owed by the plaintiffs by her two wholly-owned corporations, M. Draiman Corp. ("MDC") and U.S. Gas & Energy Corp. ("USG&E"). They further allege that those debts are non-dischargeable pursuant to 11 U.S.C. §523(a)(6). The underlying debts owed to the plaintiffs arise from MDC's and

USG&E's bad faith filing of involuntary bankruptcy petitions against the plaintiffs. Miriam has responded that she is not liable for the debts of MDC and USG&E because she was merely a shareholder and officer on paper and had nothing to do with the actual running of the corporations. Because the plaintiffs have shown that no genuine issue of material fact exists and they are entitled to judgment as a matter of law, the court will grant their motions for summary judgment.

## I. Background and Facts

These actions are part of a long and bitter war between two brothers, Yehuda Draiman ("Yehuda") and Nachshon. Miriam is Yehuda's wife. Nachshon owns Multiut, a company that provides energy-related services to its customers. The facts of these cases are described more fully in a decision issued by the court in these cases on June 22, 2006, granting in part and denying in part the plaintiffs' previous motions for summary judgment on various counts of their complaints against Miriam. The essential facts important to these motions are as follows.

In 1989, Miriam became an Independent Multiut Associate ("IMA") for Multiut and received commissions through MDC. Yehuda also began working as an IMA for Multiut in 1989. In 2000, the relationship between the brothers broke down when Nachshon learned that Yehuda was stealing customers and diverting payments due to Multiut using companies that he had formed with Miriam. Multiut filed a lawsuit against Miriam, Yehuda and their related corporations in the Circuit Court of Cook County. In January 2003, after a trial at which Miriam

testified, the state court awarded Multiut a judgment against Yehuda, Miriam, MDC, USG&E and others. Miriam was the sole shareholder of MDC and USG&E.

Following that judgment, in March 2004, Yehuda, MDC and USG&E filed involuntary petitions for relief under Chapter 7 of the Bankruptcy Code against Multiut and Nachshon (the "involuntary petitions"). The bankruptcy court dismissed the involuntary petitions almost immediately. The bankruptcy court then awarded, jointly and severally, $400,000 in compensatory damages, $25,000 in attorneys' fees, and $450,000 in punitive damages against Yehuda, MDC and USG&E in Multiut's case. The court also awarded, jointly and severally, $25,000 in attorneys' fees and another $450,000 in punitive damages against Yehuda and the two corporations in Nachshon's case (collectively, the "involuntary judgments").

Miriam filed this Chapter 7 bankruptcy case in May 2005. The plaintiffs filed separate adversary proceedings against her. The adversary complaints seek determinations that the state court judgment and the involuntary judgments are nondischargeable debts under various provisions of 11 U.S.C. § 523(a). The present motions request summary judgment only with respect to Count V of Multuit's complaint and Count I of Nachson's complaint, both of which allege that the involuntary judgments are nondischargeable under § 523(a)(6). They seek to hold Miriam personally liable for the involuntary judgments on two grounds. First, they assert that she is personally liable under Illinois law because she authorized the corporations to file the involuntary petitions against Nachson and Multuit after the corporations were involuntarily dissolved. Second, they assert that the corporate veil should be pierced because of a complete failure to observe corporate formalities, the absence of corporate records and inadequate

-3-

capitalization. Multiut and Nachshon then assert that the involuntary judgments are nondischargeable under §523(a)(6) because they arose from the willful and malicious injury caused by the involuntary petitions.

## II. Summary Judgment

A court will grant a motion for summary judgment if there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the initial burden of demonstrating the absence of material issues of fact." See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When deciding a motion for summary judgment, the court views the facts, and all permissible inferences from those facts, in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1985). Where the record could not lead a reasonable fact-finder to find for the non-moving party, disposition by summary judgment is appropriate. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

## III. Second Motion for Summary Judgment

Miriam raises a threshold issue regarding the motions for summary judgment. She argues that they are barred because they are the second motions filed by each plaintiff regarding the count at issue in each motion. In January 2006, Multuit filed a motion for summary judgment on Counts I through V of its complaint and Nachson filed a similar motion for summary judgment on Count I of his complaint. In its June 22, 2006 opinion, the court granted summary judgment

with respect to Count IV of Multuit's complaint, concluding that the state court judgment was nondischargeable as to Miriam under § 523(a)(6). However, the court denied the motions with respect to Multuit's Count V and Nachson's Count I, the same counts at issue in this motion. The court concluded that the plaintiffs' very brief treatment of the issues was not sufficient to establish that summary judgment against Miriam should be granted with respect to the involuntary judgments. Multuit and Nachson then filed the present motions, setting forth with greater specificity the undisputed facts and law supporting summary judgment on these counts.

Miriam first argues that these motions are barred under the doctrines of res judicata or collateral estoppel. However, neither doctrine prevents consideration of the motions. Res judicata and collateral estoppel apply only to final judgments on the merits obtained in prior litigation. See Dowrick v. Vill. of Downers Grove, 840 N.E.2d 785, 789-90 (Ill. App. Ct. 2005). The court's rulings on the two counts at issue in Multiut's and Nachshon's prior summary judgment motions were simply denials of their requests for summary judgment, not a final judgments on the merits. They therefore have no preclusive effect. Kirby v. P.R. Mallory & Co., Inc., 489 F.2d 904, 912 (7th Cir. 1973); Freeman v. Kohl & Vick Mach. Works, Inc., 673 F.2d 196, 201 (7th Cir. 1982). Miriam also argues that "double jeopardy" bars consideration these motions. However, the affirmative defense of double jeopardy applies only to prohibit second prosecutions for criminal offenses; it does not apply to claims raised in civil litigation. People v. Dinelli, 841 N.E.2d 968, 978-79, 217 Ill. 2d 387 (Ill. 2005) (citing U.S. Const. amend. V); People v. Gray, 823 N.E.2d 555, 558 (Ill. 2005).

Rule 56(a) of the Federal Rules of Civil Procedure governs motions for summary judgment. It provides that "a party seeking to recover upon a claim... may, at any time after the expiration of 20 days from the commencement of the action ... move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Rule 56 does not restrict a party to one motion within that time frame. While courts usually choose not to consider more than one motion for summary judgment from a party, principally for reasons of judicial economy, it is within this court's discretion to permit a second motion. See Avincola v. Maldonado, No. 04-3529-PR, 2005 WL 3116760, at *1 (2d Cir. Nov. 22, 2005); see also 27A Federal Procedure, Lawyers Edition, § 62:739 (2006).

## IV. Direct Liability for the Involuntary Judgments

Turning to the merits, in order to succeed on their motions, the plaintiffs must prevail on two issues. They must show that: (1) Miriam is personally liable for the involuntary judgments against MDC and USG&E, and (2) those judgments are nondischargeable under §523(a)(6). With respect to Miriam's personal liability, the plaintiffs assert that she is personally liable for the debt of MDC under the Illinois Business Corporation Act because she took action on behalf of the corporation after it was involuntarily dissolved. They also assert that the court should pierce the corporate veil to hold Miriam personally liable for the judgments against both MDC and USG&E.

### A. Personal Liability for MDC Debts under Illinois Business Corporation Act

First, the plaintiffs argue that Miriam is personally liable for the involuntary judgments against MDC because she conducted activities on behalf of MDC after it was dissolved. Under

-6-

Illinois law, a director of a corporation is personally liable for the improper acts of that corporation after its dissolution. 805 Ill. Comp. Stat. 5/8.65(3) (2004); see also Mid-American Elevator Co., Inc., 679 N.E.2d 387, 390-91 (Ill. App. Ct. 1997). Section 8.65(3) of the Illinois Business Corporations Act of 1983 provides:

> The directors of a corporation that carries on its business after the filing by the Secretary of State of articles of dissolution, otherwise than so far as may be necessary for the winding up thereof, shall be jointly and severally liable to the creditors of such corporation for all debts and liabilities of the corporation incurred in so carrying on its business.

805 ILCS 5/8.65(3)

In this case, the plaintiffs have established that there is no genuine issue of fact with respect to this issue, and that Miriam as sole shareholder, president and registered agent of MDC authorized MDC to file the involuntary petitions against the plaintiffs. They have further shown that Miriam authorized this action after she knew that MDC had been involuntarily dissolved by the Illinois Secretary of State. Consequently, Miriam is personally liable for the involuntary judgments.

First, the undisputed evidence shows that Miriam was the sole shareholder, president and registered agent of MDC at all times. The MDC Articles of Incorporation list Miriam as the sole shareholder, president and registered agent of the corporation, and list the registered office and president's address as Miriam's home address, where she lived during the relevant time period. Miriam's own bankruptcy schedules and related documents, filed on March 29, 2004 in an earlier individual Chapter 7 bankruptcy case she filed, confirm this. In her Schedule B (personal property) filed in 2004, Miriam listed MDC with the notation that she was the 100% shareholder.

In her Statement of Financial Affairs filed in 2004, Miriam stated that she was president and 100% stock owner of MDC. Miriam also admitted under oath at her § 341 meeting of creditors in her 2004 bankruptcy that she was the president and sole shareholder of MDC and USG&E.

Miriam argues in her response to the motions for summary judgment that her schedules show only that she was an officer in the past, not at the time of the bankruptcy filing. However, the articles of incorporation, and her own schedules and testimony conclusively prove that this is not true, and she presents no evidence to support her assertion in any event. Therefore, no genuine issue of fact exists regarding Miriam's status as sole shareholder, director and officer of both corporations in March 2004 when the involuntary petitions were filed.

The plaintiffs have also established that MDC was involuntarily dissolved by the Illinois Secretary of State on March 1, 2004 and that Miriam received notice of the dissolution. The Certificate of Dissolution issued by the Secretary of State dated March 1, 2004 shows Miriam's home address as the address of MDC. Section 12.40 of the Illinois Business Corporation Act requires the Secretary of State to send at least two notices of dissolution to the registered address. 805 ILCS 5/12.40. Miriam admitted at her Section 341 meeting in April 2004 that she had received notices of dissolution of the corporations she owned and that she knew that "they have been involuntarily dissolved already." Miriam does not deny that she knew that MDC was dissolved before the involuntary petitions were filed. Therefore, it is beyond dispute that Miriam had actual knowledge that the Secretary of State had involuntarily dissolved MDC when the involuntary petitions were filed.

In addition, even if Miriam did not have actual notice of the dissolution before the involuntary petitions were filed, she would still be deemed to have knowledge for purposes of holding her personally liable for the acts of MDS after dissolution. Illinois courts have held that in order to hold an officer personally liable for debts of a dissolved corporation, evidence is required to show that the officer knew, or because of her position should have known, about the involuntary dissolution. See Gonnella Baking Co. v. Clara's Pasta Di Casa, Ltd., 786 N.E.2d 1058, 1062 (Ill. App. Ct. 2003); Steve's Equip. Serv., Inc. v. Riebrandt, 459 N.E.2d 21, 24 (Ill. App. Ct. 1994). As sole shareholder, officer and director, Miriam should have known about the involuntary dissolution. She would therefore be liable for MDC's post-dissolution acts even if she had not received actual notice of the dissolution. See Hong Kong Electro-Chemical Works, Ltd. V. Less, No. 05 C 3582, 2006 WL 1120595, at *2 (N.D. Ill., April 25, 2006).

Finally, Miriam unequivocally admitted under oath at her 2004 § 341 meeting that she authorized Yehuda to file the involuntary petitions on behalf of MDC and USG&E. Miriam's written response to the plaintiffs' evidence in their motions and statements of undisputed facts regarding this admission simply states, "Deny. Not true." This simple denial is insufficient to create a genuine issue of material fact. See Essick v. Yellow Freight Sys., Inc., 965 F.2d 334, 335 (7th Cir. 1992) ("[A] party should not be allowed to create issues of credibility by contradicting his own earlier testimony.") (citations omitted).

Thus, the plaintiffs have demonstrated that there is no genuine issue regarding all of the facts necessary to establish Miriam's personal liability for the involuntary judgments against MDC. She was the sole shareholder, officer and director of MDC who knew that the corporation

was dissolved and nonetheless authorized Yehuda to list MDC as a petitioning creditor in the involuntary petitions filed against the plaintiffs. Under Illinois law, Miriam is therefore personally liable for the involuntary judgments entered against MDC.

### B. Piercing the Corporate Veil

Because Miriam is personally liable for the entire amount of the involuntary judgments on behalf of MDC, it is not necessary to determine whether there are sufficient grounds to pierce the corporate veil with respect to USG&E. However, this court nonetheless finds that the plaintiffs have met their burden of proving that there is no genuine issue of material fact with respect to piercing the corporate veil.

Piercing the corporate veil is an equitable remedy under which shareholders of a corporation are held liable for the corporation's debts. See In re Rehab. of Centaur Ins. Co., 606 N.E.2d 291, 296 (Ill. App. Ct. 1992). For this doctrine to apply, two requirements must be met: "first, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and second, circumstances must be such that an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." Gallagher v. Reconco Builders, Inc., 415 N.E.2d 560, 563-64 (Ill. App. Ct. 1980). Courts weigh numerous factors in deciding whether to look past the corporate entity and hold a shareholder personally liable, including: "inadequate capitalization, failure to issue stock, failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation at the time, non-functioning of other officers or directors, absence of corporate records and

whether in fact the corporation is only a mere facade for the operation of the dominant stockholders...." Id. at 564; see also In re Estate of Wallen, 633 N.E.2d 1350, 1357-358 (Ill. App. Ct. 1994); Cent. States Southeast and Southwest Areas Pension Fund v. Gaylur Prods., Inc., 384 N.E.2d 123, 126-27 (Ill. App. Ct. 1978).

While a number of these factors appear to be present in this case, the plaintiffs have only established two of them, the failure to observe corporate formalities and failure to maintain corporate records for MDC and USG&E through the date of the involuntary petitions. The plaintiffs rely in part on the findings of the state court judgment discussed at length in the June 22, 2006 opinions issued in these cases. The state court made a factual finding that there were no minutes, resolutions, tax returns or any other form of record for USG&E (and other corporations not at issue here), and there was a failure to follow corporate formalities. Multiut Corp. v. Draiman, Nos. 01 CH 9989, 01 CH 20337, slip op. at 10 (Ill. Cir. Ct., Cook Cty., Jan. 17, 2003). The state court concluded that Yehuda was the alter ego of the corporations, including USG&E. Id.

The doctrine of collateral estoppel is discussed in the June 22, 2006 opinion, and that discussion is incorporated by reference into this opinion. The court finds that: (1) the factual issues regarding the absence of corporate records and lack of corporate formalities decided by the state court is identical to the factual issues presented here, (2) there was a final judgment on the merits in that case, (3) Miriam was a party to that action and her testimony formed part of the basis for the court's findings, and (4) these factual issues were actually and necessarily litigated in the state court action. See LaSalle Bank Nat'l Ass'n v. Vill. of Bull Valley, 826 N.E.2d 449,

-11-

455 (Ill. App. Ct. 2005). Therefore, the state court's findings that corporate formalities were not observed and no corporate documents were maintained with respect to USG&E are entitled to collateral estoppel effect in these adversary proceedings. These findings are conclusive for the time period through the January 17, 2003 entry of the state court judgment.

The plaintiffs further assert that the failure to observe corporate formalities and maintain corporate records continued from January 17, 2003 through March 2004, when the involuntary petitions were filed. In 2003, Multiut served a citation to discover assets on the corporations, but Miriam failed to produce any corporate records in response. The plaintiffs also served document requests and interrogatories in these adversary proceedings requesting MDC's and USG&E's corporate records, and Miriam again failed to produce any such records. Miriam has not produced a single document to refute the plaintiffs' contention that she failed to keep any corporate records for MDC or USG&E during the relevant time-frame. In fact, Miriam has not shown that there are any facts supporting her position that the corporate veil should not be pierced or that there is any genuine dispute regarding any fact relevant to the court's analysis.

Miriam's only response to the plaintiffs' motions and the discovery requests is that she has no corporate documents because she was never in charge of the corporations. Miriam asserts that Multiut maintained the corporate records for USG&E and MDC, and that she never had access to them. However, this explanation, even if true, does not absolve Miriam of her obligation to ensure that corporate formalities were observed and corporate records maintained. As sole shareholder, director and officer of both companies, Miriam cannot escape responsibility for the actions of the corporations simply by saying that she knew nothing and was not involved.

See Hong Kong, 2006 WL 1120595, at *2 (president and only officer of a corporation "cannot escape liability by attempting to distance herself from the company."). She had a responsibility to continue to maintain those records and she has failed to demonstrate that she did so.

Miriam has also failed to show that any other factor is relevant to the court's determination regarding piercing the corporate veil, let alone that a genuine issue of fact exists regarding any such factor. In addition, as discussed below, the evidence regarding the involuntary judgments demonstrates beyond doubt that Miriam's use of the corporations as petitioning creditors in the involuntary petitions is exactly the kind of circumstance in which "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." Gallagher, 415 N.E.2d at 563-64. The court therefore concludes that there is no genuine issue of fact that requires a trial in this case, and that piercing the corporate veil with respect to the involuntary judgments against MDC and USG&E is appropriate in light of the uncontested facts of this case.

### V. Debt is Non-Dischargeable

The debt arising from the involuntary judgments is also non-dischargeable. Section 523(a)(6) provides that "(a) a discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... (6) for willful and malicious injury by the debtor to another entity or to the property of another entity." In order to establish the nondischargeability of the involuntary judgments under §523(a)(6), the plaintiffs must show that Miriam's conduct was willful and malicious. See Kawaauhau v. Geiger, 523 U.S. 57, (1998); In re Haemonetics Corp.

v. Dupre (In re Dupre), 229 F.3d 1133 (1st Cir. 2000). The term "willful" means "deliberate or intentional," and "malicious" means "wrongful and without just cause or excuse even in the absence of personal hatred, spite or ill will." In re Condict, 71 B.R. 485, 487 (N.D. Ill. 1987).

The court finds that Miriam acted willfully and maliciously, through MDC and USG&E, in filing the involuntary bankruptcy cases against the plaintiffs. As discussed in the June 22, 2006 opinion, the bankruptcy court in those cases in awarding actual damages, attorneys' fees, and punitive damages for the bad faith filings, expressly determined that the Chapter 7 Petitions were filed to cause economic injury and embarrassment to the plaintiffs. Judge Schwartz specifically stated, "[I] don't think there is any question that this was done on purpose to harm without cause."

The petitioning creditors in the involuntary cases further demonstrated that their actions were willful and malicious by faxing copies of the involuntary petitions to approximately 45 vendors, credit agencies, suppliers, and other business associates of the plaintiffs. These faxes were sent from Miriam's home, some of them after the involuntary cases had been dismissed. In assessing attorneys' fees, compensatory damages, and punitive damages against the Petitioning Creditors, the bankruptcy court specifically acknowledged that the petitioning creditors' acts constituted an abuse of the bankruptcy process and might even be criminal acts.

Consequently, the court finds that the Debtor's conduct in directing MDC and USG&E to file the involuntary cases against the plaintiffs in bad faith constitutes willful and malicious behavior with the intent to harm the plaintiffs. The involuntary judgments are therefore nondischargeable under §523(a)(6) of the Bankruptcy Code.

## VI. Conclusion

For the reasons stated above, the plaintiffs' motions for summary judgment with respect to Count V of Multiut's complaint and Count I of Nachshon's complaint are granted. Miriam is personally liable for the entire amount of the involuntary judgments, and these debts are non-dischargeable.

Dated:  December 22, 2006

ENTERED:

_____
CAROL A. DOYLE
United States Bankruptcy Judge